## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| PETER ROESER, individually and on behalf of all others similarly situated; | Case No. 13-cv-01968-JRT-HB |
| Plaintiff, | **MEMORANDUM IN SUPPORT OF JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |
| v. | |
| BEST BUY CO., INC., BEST BUY STORES, L.P., BBY SOLUTIONS, INC., BESTBUY.COM, LLC, AND GEEK SQUAD; | |
| Defendants. | |

Plaintiff respectfully submits this Memorandum in Support of Plaintiff's Motion for Preliminary Approval of Class Action Settlement pursuant to Rules 23(a), (b)(3), (c)(2)(B), and (e)(1) of the Federal Rules of Civil Procedure for an Order:

1.      Preliminarily approving the stipulated Settlement Agreement ("Agreement") between Plaintiff and the Defendants pursuant to Fed. R. Civ. P. 23(e);

2.      Conditionally certifying the proposed Class ("the Class");

3.      Appointing Plaintiff's counsel as Settlement Class Counsel;

4.      Approving the form and content of the proposed Class Notice, pursuant to Fed. R. Civ. P. 23(c)(2)(B) and directing its dissemination to the Settlement Class pursuant to Fed R. Civ. P. 23(e)(1);

5.      Establishing a date for the Final Fairness Hearing pursuant to Fed. R. Civ. P. 23(e)(1)(c);

6.      Setting deadlines for accomplishing all other steps in the Settlement approval process; and

7.      Staying the proceedings against the Defendants in accordance with the terms of the Settlement.

The proposed Settlement satisfies all recognized standards for preliminary approval as it is fair, reasonable, and adequate, and is an adequate arm's-length compromise concerning the claims in this action. Additionally, the proposed Class satisfies the criteria for provisional class certification under Rule 23 of the Federal Rules of Civil Procedure, and the proposed Notice to prospective Class Members comports with due process and Rule 23, both as to its content and as to the method of its dissemination.  The Court should preliminarily approve the Settlement, conditionally certify the proposed Settlement Class, appoint Plaintiff as Class Representative, approve the conditional appointment of Settlement Class Counsel, and approve the proposed form and content of the Notice of the Settlement to be disseminated to prospective Class Members.

# I.    STATEMENT OF FACTS

## A.    Litigation Background

This litigation concerns Plaintiff's claims, for himself and for the proposed Class, against Defendants for allegedly failing to provide "Ongoing Support" for Geek Squad's Home Networking Made Simple product ("HNMS"), specifically for the amount of time represented in various advertisements and as promised in its Terms of Service.  Plaintiff also alleged that by interpreting the HNMS Terms of Service in an incorrect manner (dating from purchase, rather than installation), Defendants unlawfully refused to install his home network altogether. Specifically, Plaintiff alleged violations of (1) Minn. Stat. § 325F.69, Subd. 1 (Consumer Fraud), (2) Minn. Stat. § 325F.67 (False Statement in Advertising), (3) Minn. Stat. § 325D.44 (Deceptive Trade Practices), (4) Minn. Stat. § 325D.13 (Unlawful Trade Practices), and (5) breach of contract.  Plaintiff sought damages and injunctive relief requiring Defendants to reinstate the services promised pursuant to his purchase of the HNMS product.

Plaintiff filed his Complaint in the United States District Court for the District of Minnesota on July 22, 2013.  Prior to answering, Defendants reached out to discuss resolution of the case, seeking and obtaining an extension of time to respond to Plaintiff's Complaint while settlement negotiations ensued. Plaintiff and Defendants then argued the merits of each party's respective

positions via in-person meetings, as well as correspondence and telephone calls. Defendants provided informal discovery regarding the size of the Class and produced call logs of Class Members who sought HNMS service. The parties also engaged in Rule 26(f) planning conferences and appeared before Judge Graham during a Rule 16 status conference in February 2014.

On November 15, 2013, the parties engaged in an in-person mediation conducted by the Honorable James M. Rosenbaum in Minneapolis, Minnesota. At that mediation, the parties came to an agreement on the substantive terms regarding the relief to the sub-classes, and agreed to and signed a Term Sheet listing the Settlement's principal relief to the Class. The Plan of Notice, release, and attorneys' fees provisions of the Settlement Agreement were thereafter negotiated separately. In December 2014, the parties finalized and executed the Agreement.

At the outset of this litigation, the parties collectively concluded that an early resolution of this case upon the terms provided was beneficial for both parties and the Class. The instant settlement was the product of arm's-length bargaining aided by a neutral mediator, and reflects a careful balancing of the merits of the parties' respective claims and defenses. The Settlement further provides relief for Plaintiff and the Class, while avoiding costly, burdensome, and time-consuming litigation for both parties and the Class.

**B.      The Settlement Class**

The Settlement Agreement provides for certification of a Settlement Class,

defined as follows:

> All individuals who purchased Geek Squad's "Home Networking Made Simple" product from Geek Squad or Best Buy since July 22, 2012, and all individuals who, on July 22, 2012, had "Home Networking Made Simple" contracts that had not yet expired or come up for renewal.

> Excluded from the Settlement Class are Defendants, any entities in which they have a controlling interest, any of their parents, subsidiaries, affiliates, officers, directors, and the presiding judge(s) in this case and his, her, or their immediate family.

Within this Class are 3 Sub-Classes defined as follows:

Sub-Class A:      Class Members whose Home Networking Made Simple contracts expired on or after July 22, 2012, and who are not part of Sub-Class C (articulated below);

Sub-Class B:      Class Members with active Home Networking Made Simple contracts; and

Sub-Class C:      Comprised of 86 Class Members who were identified as having Home Networking Made Simple contracts that expired on or after July 22, 2012, and who subsequently contacted Best Buy to schedule network installation in their homes.

No additional class members will be added to Subclass C. Ex. A, Settlement

Agreement at 5-6.[1]

---

[1] All Exhibits (e.g., Ex. A) referenced within this memorandum are attached to the Affidavit of Anne T. Regan, filed contemporaneously.

**C.      The Settlement Provides Substantial Value and Benefits to the Class.**

<u>Class Compensation</u>:   The Settlement provides substantial relief to the Class, above and beyond any full recovery that could have been obtained at trial.

First, each of the 86 Class Members in Sub-Class C who contacted Best Buy for their home installation after the expiration of their six-month service plan will receive $100 in cash.  The parties agree that the $100 amount fairly and adequately compensates these purchasers of the HNMS plan.

With respect to Class Members in Sub-Classes A and B, following final approval of the settlement, they will receive an additional six (6) months of "Ongoing Support" at no cost.  Sub-Class A members, whose HNMS contracts have already expired, will automatically receive the right to a new, six-month service period for their home networks. Members of Sub-Class B will receive a six (6) month extension at the expiration of their current HNMS contracts which, for purposes of this settlement,[2] will be deemed expired as of July 31, 2015.

---

[2]      The Settlement Agreement requires Best Buy to provide an additional six (6) months of service to commence at the end of each Sub-Class B's contract. As of October 2014, there are only approximately 2,252 people remaining in this Sub-Class and Best Buy has determined that the latest expiration date for any members of this Sub-Class B will be July 31, 2015. Therefore, for ease, rather than compute when each individual's term expires, Best Buy instead will treat all members of Sub-Class B as though their HMNS contract will expire on July 31, 2015 and the additional six (6) months of service will extend until January 31, 2016.

Therefore, the current HNMS contracts with the 6-month extension will expire on January 31, 2016.

Attorneys' Fees:  The Settlement includes an attorneys' fees structure that is both fair and reasonable.  Defendants have agreed to pay Settlement Class Counsel's attorneys' fees separately from the Settlement Benefits awarded to the Class.  Defendants agree to pay between $100,000 and $695,000, the final amount to be determined by the Court.

Plaintiff's Service Award:  For his service in this litigation and separate from the Settlement Benefits awarded to the Class, Defendants agree to pay Named Plaintiff Peter Roeser $2,000 in the form of a Best Buy gift card.

**D.    Class Notice**

Due to the nature of the Class and the claims, it is believed that all Class Members are accessible by email or a physical address, which are maintained in Best Buy's records. The Settlement Agreement provides for a plan under which notice of the Settlement will be disseminated by email, or, should the email be returned as undeliverable, by U.S. mail.

## II.    ARGUMENT

It is long settled that "compromises of disputed claims are favored by the courts." *Williams v. First Nat'l Bank of Pauls Valley*, 216 U.S. 582, 585 (1910).  As a matter of long-standing policy, settlement is the strongly favored method of

resolving disputes. *See Katun Corp. v. Clarke*, 484 F.3d 972, 975 (8th Cir. 2007) ("Minnesota courts recognize a 'strong public policy favoring the settlement of disputed claims without litigation.'") (citations omitted); *Liddell v. Board of Educ. of the City of St. Louis*, 126 F.3d 1049, 1056 (8th Cir. 1997). This policy favoring settlement is particularly strong in the class action context. *White v. Nat'l Football League*, 822 F. Supp. 1389, 1416 (D. Minn. 1993) ("The policy in federal court favoring the voluntary resolution of litigation through settlement is particularly strong in the class action context."); *In re Uponor, Inc., F1807 Plumbing Fittings Prods. Liab. Litig.*, 111-MD-2247, 2012 WL 2512750, at *7 (D. Minn. June 29, 2012) (same); *Unitarian Universalist Church of Minnetonka v. City of Wayzata*, Civ. No. 10-607, 2012 WL 3889121, at *4 (D. Minn. Aug. 31, 2012).

In determining whether preliminary approval of the Settlement is appropriate, the Court must decide whether the proposed Settlement is within the range of what could be found fair, reasonable, and adequate, so that notice of the proposed settlement can be dispersed to Class Members and a hearing scheduled to consider Plaintiff's motion for final approval of the proposed settlement. *See Xcel Energy, Inc., Sec., Deriv. & ERISA Litig.*, 364 F. Supp. 2d 1005 (D. Minn. 2005).

The Eighth Circuit has established four factors for determining whether a proposed settlement is fair, reasonable, and adequate within the meaning of

Rule 23(e): (1) the merits of plaintiffs' case weighed against the terms of the settlement, (2) the defendant's financial conditions, (3) the complexity and expense of further litigation, and (4) the amount of opposition to the settlement. *In re UnitedHealth Group, Inc. S'holder Deriv. Litig.*, 631 F. Supp. 2d 1151, 1156 (D. Minn. 2009). At the preliminary approval stage, only the first three factors are relevant. *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 932 (8th Cir. 2007). The court also reviews the settlement to ensure it resulted from arm's-length negotiations and is not the product of collusion. *In re UnitedHealth Group, Inc.*, 631 F. Supp. 2d at 1156; *In re Wireless*, 396 F.3d at 934.

This Settlement meets the appropriate standard and should be granted preliminary approval.

**A.    The Terms of the Settlement Provide a Substantial Benefit to the Class.**

The terms of the Settlement provide a recovery better than Plaintiff and the Class could obtain at trial. The Settlement provides a $100 payment in cash to members of Sub-Class C—86 individuals who did not schedule installation of home networks within six (6) months of their purchase of the HNMS plan. The Settlement further provides a 6-month extension of service for members of Sub-Classes A and B. Plaintiff alleges that individuals in these two Sub-Classes were shorted a period of support coverage, calculated as the amount of time between their date of purchase and the date their home networks were installed. Given

that the HNMS plan provided for six (6) months of support in its entirety and
that the typical delay between date of purchase and date of install was a matter
of days, any actual injury to Class Members was far less than the six-month
extension provided in the settlement and represents a better outcome than the
Class could have achieved at trial.

**B.      Expense and Uncertainty of Continued Litigation Favors Preliminary
         Approval.**

Although Plaintiff believes the case has strong merits, Plaintiff faced
several obstacles to obtaining a favorable judgment.  For example, Defendants
would have raised arguments that Class Members who never made a call to
request "Ongoing Support" under their HNMS plans—and were thus not
"denied" service—were not injured and thus lacked standing for class
certification.  Defendants also denied that Best Buy maintained an internal policy
of denying HNMS purchasers their initial home network installation if they
called after six (6) months from their date of purchase.  Defendants further
would have argued that some Class Members were provided service nonetheless
and that some obtained refunds, *i.e.*, that Best Buy treated Class Members
inconsistently and not all were injured.

The complexities of these defenses and continued litigation carry
substantial risks, including (a) the significant risk and expenses necessary to
prosecute Plaintiff's claims against Defendants through trial and subsequent

appeals, and (b) the inherent difficulties and delays that complex litigation entails.  Given these difficulties, together with the relief the Settlement provides to the Class, Plaintiff and Settlement Class Counsel believe the proposed Settlement achieves an excellent result and eliminates the risk of various litigation pitfalls.  Accordingly, preliminary approval of the Settlement is appropriate.

The terms of the proposed Settlement were reached via arm's-length negotiation.  Prior to entering into the proposed Settlement, Settlement Class Counsel engaged in extensive negotiations with Defendants, detailing Plaintiff's position and discussing relevant case law on standing, class certification, and the merits.  Best Buy produced its customer call logs for Plaintiff's and Settlement Class Counsel's review as well as preliminary information outlining the size of the Class and Sub-Classes.

Settlement Class Counsel have decades of experience in complex class action litigation and have negotiated several substantive settlements. After carefully considering the merits and likelihood of prevailing on their claims, the likely defenses to be argued by Defendants, the risk, expense and duration of continued litigation, and comparing these factors to the relief offered by the proposed Settlement and the near impossibility that a greater result could be achieved at trial, Plaintiff and Settlement Class Counsel concluded that entering

the proposed Settlement would garner the best expected compensation for Plaintiff and the Class.  Continued litigation, which could include a lengthy trial and appeals, would only harm the Class by increasing costs and attorneys' fees with minimal chance of improving the benefit to the Class.  Accordingly, Plaintiff and Settlement Class Counsel concluded that the proposed Settlement is fair, reasonable, and adequate, and in the best interest of the Class.

Here, the parties have engaged in arm's-length bargaining and have exchanged sufficient discovery. Thus, settlement is favored by presumption.  *See In re UnitedHealth Group, Inc.*, 631 F. Supp. 2d at1158 ("Where sufficient discovery has been provided and the parties have bargained at arms-length, there is a presumption in favor of the settlement.").  Moreover, Settlement Class Counsel's extensive experience is entitled to substantial weight.  *See In re Employee Benefit Plans Sec. Litig.*, No. 3-92-708, 1993 WL 330595, at *5 (D. Minn. June 2, 1993); *In re Uponor, Inc.,* 2012 WL 2512750, at *7 ("[C]ourts give great weight to and may rely on the judgment of experienced counsel in its evaluation of the merits of a class action settlement.") (internal quotations omitted); *Xcel Energy, Inc.*, 364 F. Supp. 2d at 1018.

An evaluation of the benefits of a settlement must recognize that any compromise involves concessions on the part of all settling parties.  *In re UnitedHealth Group, Inc. PSLRA Litig.*, 643 F. Supp. 2d 1094, 1099 (D. Minn. 2009);

*see also Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982)

("[T]he very essence of a settlement is compromise, 'a yielding of absolutes and

an abandonment of highest hopes.'") (citations omitted).   Given the well-

recognized expenses and risks of class litigation, *Schmidt v. Fuller Brush Co.*, 527

F.2d 532, 535 (8th Cir. 1975) (recognizing that "class actions place an enormous

burden of costs and expense upon the parties"), coupled with the substantial

benefits provided to the Class by the Settlement, preliminary approval is

warranted.

## C.     Certification of Settlement Classes

Certification of the Settlement Class at the final approval stage requires

satisfaction of all Rule 23 criteria, with the exception of the Rule 23(b)(3)

requirement that a class action trial be manageable.   *See Amchem Prods., Inc. v.*

*Windsor*, 521 U.S. 591, 620 (1997).  In fact, courts have generally recognized that

"[t]he requirements for class certification are more readily satisfied in the

settlement context than when a class has been proposed for the actual conduct of

the litigation."   *White*, 822 F. Supp. at 1402; *In re Beef Indus. Antitrust Litig.*, 607

F.2d 167, 178 (5th Cir. 1979) ("[I]t is altogether proper and consistent for a court

to certify a class for settlement purposes, while it might have had more difficulty

reaching this determination in a different context."); *Bowling v. Pfizer, Inc.*, 143

F.R.D. 141, 159 (S.D. Ohio 1992) ("[T]he requirements of Rule 23 are more easily

satisfied for settlement purposes than for litigation purposes."). As *Bowling* explains, "[t]he rationale behind the loosening of the Rule 23 requirements for settlement classes is to encourage sweeping settlements of complex disputes." 143 F.R.D. at 157-58. Accordingly, class actions are routinely certified as part of proposed settlements. *Stewart v. CenterPoint Energy Res. Corp.*, No. 05-CV-1502, 2006 WL 839509, at *1 (D. Minn. Mar. 28, 2006) (conditionally certifying settlement class of gas consumers); *In re Xcel Energy, Inc.*, 364 F. Supp. 2d 1013, 1018 (D. Minn. 2005) (conditionally certifying settlement class of stock purchasers).

A Class may only be certified under Rule 23 if: "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). In addition, the Class must meet (in this instance) subsection (b)(3), which requires the following:

> (3) the court finds that the questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;

14

(B)   the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C)   the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D)   the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).  The proposed Settlement meets all of these requirements.

### 1.  The Proposed Settlement Meets the Numerosity Requirement.

While courts have not arrived at an exact number threshold that satisfies numerosity, a class size in excess of forty members has sufficed.  *See Lockwood Motors, Inc. v. General Motors Corp.*, 162 F.R.D. 569, 574 (D. Minn. 1995) (citing 3B Moore's Federal Practice P 23.05[1] at 23-143-45 (2d ed. 1995)).   Based on discovery produced by Defendants, the total class is approximately 213,000 members, with approximately 210,000 comprising Sub-Class A, approximately 2,250 comprising Sub-Class B (as of October 2014), and 86 comprising Sub-Class C.   A Class of this size is impracticable for joinder and meets the numerosity requirement of Rule 23(a).

### 2.  The Proposed Settlement Meets the Commonality Requirement.

Rule 23(a) also requires that there are "common questions of law or fact among members of the class."  Fed. R. Civ. P. 23(a).  This standard is met because Plaintiff need only show that a single legal question is common to the class.  *See, e.g., DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995) ("Commonality is not required on every question raised in a class action.   Rather, Rule 23 is

satisfied when the legal question linking class members is substantially related to resolution of the litigation.") (quotations and citations omitted); *Jones v. CBE Group, Inc.*, 215 F.R.D. 558, 568 (D. Minn. 2003) ("[I]f the legal question they share in common is related to the determination of the litigation, the commonality requirement is met."); *Bradford v. Union Pac. R.R.*¸ No. 05-CV-4075, 2007 WL 2893650, at *6 (W.D. Ark. Sept. 28, 2007) ("As long as there is at least one common legal question that substantially relates to the resolution of the litigation, commonality is met.").

In addition, individual class members are not required to be identically situated in order to meet commonality. *Parkhill v. Minnesota Mut. Life Ins. Co.*, 188 F.R.D. 332, 338 (D. Minn. 1999) ("[I]ndividual class members need not be 'identically situated' to meet the commonality requirement. Factual differences are not fatal to maintenance of the class action if common questions of law exist."); *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 561 (8th Cir. 1982) ("[Commonality] may be satisfied, for example, where the question of law linking the class members is substantially related to the resolution of the litigation even though the individuals are not identically situated.") (quotations omitted).

Here, the primary question of law is whether Defendants unlawfully terminated Plaintiff's and the Class' HNMS "Ongoing Support" service

16

prematurely and in violation of the Terms of Service and various Minnesota statutes. All Class Members are allegedly victims of the same alleged internal policy which calculated the length of the contract to run from the date of purchase rather than from the date of home network installation. The damages they sustained as a result, whether they were unable to obtain installation at all or had the length of their contracts shortened, all flow from the same alleged legal wrong. Accordingly, commonality is met for the Class.

### 3. Plaintiff's Claims are Typical of Those of Absent Class Members.

The third requirement of Rule 23 is that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a). Because typicality is closely related with the commonality requirement, typicality is usually met where commonality is also satisfied. *Jones*, 215 F.R.D. at 568 ("Typicality and commonality are closely related, and typicality is generally found where the commonality requirement has been met."). The typicality requirement is met where members of the proposed class have "the same or similar grievances as the plaintiff." *Parkhill*, 188 F.R.D. at 339 (citing and quoting *Paxton*, 688 F.2d at 562). "Class members have the same or similar grievances if they have been subjected to the same allegedly unlawful treatment as the named plaintiff." *Parkhill*, 188 F.R.D. at 339 (citing and quoting *Paxton*, 688 F.2d at 562). Accordingly, typicality does not require that the class

representative's claims be factually identical to those of absent class members. *Alpern v. Utilicorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996) ("Factual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory."); *Donaldson v. Pillsbury Co.*, 554 F.2d 825, 831 (8th Cir. 1977); *Egge v. Healthspan Servs. Co.*, 208 F.R.D. 265, 269 (D. Minn. 2002) ("[A] strong similarity of legal theories will satisfy the typicality requirement despite substantial factual differences."); *In re Control Data Corp. Sec. Litig.*, 116 F.R.D. 216, 220 (D. Minn. 1986) ("When the claims or defenses of the representatives of the class are based on the same course of conduct or legal theory, it is thought that the representatives will advance the interest of the class members by advancing his or her own interests.").

Here, Plaintiff's claims are typical of the proposed Class' claims. Like every member of the Class, Plaintiff was entitled to various HNMS services that Defendants allegedly failed to uphold as represented by Defendants in various advertisements and under the Terms of Service. Accordingly, Plaintiff's claims are typical of the Class' claims. *See Parkhill*, 188 F.R.D. at 339 ("Plaintiff contends that, like all policyholders in the purported class, he was entitled under the terms of his policy to have the Ultimate Interest crediting method applied to his premium payments in the same fashion and manner as it was promised and

18

represented by defendant . . . .   The court concludes that plaintiff's claims are typical of those of the rest of the proposed class.   While plaintiff held only an Adjustable Life policy and his proposed class includes a variety of other cash value life insurance policies, the variation in the type of policy involved does not diminish the fact that all the policies in question involved the Ultimate Interest method.").

### 4.  Plaintiff is an Adequate Representative for the Class.

The final Rule 23(a) requirement is that "the representative parties will fairly and adequately protect the interests of the class."   Fed. R. Civ. P. 23(a). "The adequacy-of-representation requirement tend[s] to merge with the commonality and typicality criteria of Rule 23(a), which serve as guideposts for determining . . . whether the named plaintiff's claim and the class claims are also so interrelated that the interests of the class members will be fairly and adequately protected in their absence."   *Amchem Prods.*, 521 U.S. at 626 n.20 (citation and internal quotation marks omitted).

The focus regarding adequacy is "whether:  (1) the class representatives have common interests with the members of the class; and (2) whether the class representatives will vigorously prosecute the interests of the class through qualified counsel."   *Paxton*, 688 F.2d at 562-63; *Wakefield v. Monsanto Co.*, 120 F.R.D. 112, 117 (E.D. Mo. 1988) (same).   Absent evidence to the contrary, a

proposed class representative's adequacy of representation is presumed. *Ass'n for Disabled Ams., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 464 (S.D. Fla. 2002); *Access Now, Inc. v. Ambulator Surgery Ctr. Group, Ltd.*, 197 F.R.D. 522, 528 (S.D. Fla. 2000); *Lozada v. Dale Baker Oldsmobile, Inc.*, 197 F.R.D. 321, 330 (W.D. Mich. 2000); *Walton v. Franklin Collection Agency, Inc.*, 190 F.R.D. 404, 410 (N.D. Miss. 2000).

Plaintiff meets the adequacy requirement here because his interests align with the interests of absent Class Members. Plaintiff, like Class Members, seeks fair compensation for damages suffered as a result of Defendants' alleged conduct. Plaintiff and the Class Members all have a substantial stake in this litigation and Plaintiff has a strong incentive to vigorously pursue their claims. Furthermore, Plaintiff has no material conflicts of interest with absent Class Members.

Additionally, Plaintiff's counsel has met the adequacy requirement because Plaintiff's counsel have extensive experience litigating similar class action cases and have thus far represented Plaintiff admirably in this case.[3] *See Karjens v. Jesson*, 283 F.R.D. 514, 519 (D. Minn. 2012) (holding class counsel with previous experience in relevant substantive area of law were adequate as class counsel); *Lockwood Motors, Inc. v. General Motors Corp.*, 162 F.R.D. 569, 576 (D. Minn. 1995) (holding class counsel adequate where they had "substantial

---

[3] See Exhibits B and C.

experience similar to the case at bar."); *Rains v. City of Minneapolis, Minn.*, Nos. 3-91-138, 91-139, 1991 WL 238262, at *4 (D. Minn. July 31, 1991) (class counsel adequate where class counsel had experience in similar claims and defendant did not allege class counsel lacked experience or the means to represent the class); *Jenson v. Continental Financial Corp.*, 404 F. Supp. 806, 811-12 (D. Minn. 1975) (rejecting defendants' argument that class counsel "failed to provide adequate evidence of their competency" to represent the class where class counsel submitted affidavits attesting to their experience in similar cases and had advocated effectively for plaintiff in the litigation).  The Rule 23(a) adequacy requirement is satisfied here.

## D.  Questions of Law or Fact Common to All Class Members Predominate.

In addition to the Rule 23(a) requirements, the proposed Class also meets the Rule 23(b)(3) requirements because: (1) common questions of law or fact will predominate over questions affecting only individual members; and (2) a class action is "superior to other available methods" of adjudicating a case.  Fed. R. Civ. P. 23(b)(3).  There are no bright line rules for determining whether common questions predominate.  *In re Workers' Compensation*, 130 F.R.D. 99, 108 (D. Minn. 1990).  The fundamental question in determining whether predominance is met is "whether the group aspiring to class status is seeking to remedy a common legal grievance."  *Lockwood Motors*, 162 F.R.D. at 580.  Courts generally hold

predominance is met when "the liability issue is common to the class."  *In re Select Comfort Corp. Securities Litig.*, 202 F.R.D. 598, 610 (2001).  The common questions need not be determinative or dispositive of the action as a whole in order to meet the predominance requirement.  *Id.*  Nor does predominance require all questions of law or fact to be common to the class, only that they predominate.  *Dirks v. Clayton Brokerage Co. of St. Louis Inc.*, 105 F.R.D. 125, 131-32 (D. Minn. 1985).  Additionally, "the mere fact that there are certain issues that may need to be determined on an individual basis does not necessarily preclude the satisfaction of the predominance requirement."  *Id.*

**E.**     **Class Treatment is Superior to Alternative Forms of Adjudication of Plaintiff's Claims.**

In addition to the predominance requirement, Rule 23(b)(3) requires that a class action be "superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).  Factors considered in determining whether class treatment is superior to alternative forms of adjudication are: (1) the interest of class members in individually controlling the prosecution of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by class members; (3) the desirability of concentrating the litigation of claims in the particular forum; and (4) the difficulties likely to be encountered in managing a class action.  Fed. R.

Civ. P. 23(b)(3)(A)-(D).  In the context of this Settlement, however, the question of case manageability is irrelevant.  *See Amchem Prods.*, 521 U.S. at 620.

There is no "bedrock standard" for determining whether a class action is superior to alternative methods of adjudication.  *Mund v. EMCC, Inc.*, 259 F.R.D. 180, 186 (D. Minn. 2009).  Rather, "the determination of superiority often turns on the manageability, and the efficiency, of the proposed class action, in contrast to other, alternative methods of suit."  *Brancheau v. Residential Mortg. Group, Inc.*, 177 F.R.D. 655, 661 (D. Minn. 1997).  Because the manageability of class actions is not relevant for settlement-only class certification, superiority in this case turns on the economic feasibility of individual suits as compared to a class action. Indeed, "[t]he most compelling rationale for finding superiority in a class action is whether the action is a negative value suit."  *In re Baycol Prod. Litig.*, 265 F.R.D. 453, 458 (D. Minn. 2008) (holding class action superior where costs of individually litigating for a refund of economic damages "would dwarf the amount of any individual claim.").

This is a case where the costs of individual litigation would exceed the potential benefits.  Even members of Sub-Class C, who will receive $100 in cash, could not litigate their claims in an economically feasible manner, much less members of Sub-Classes A and B, who receive a 6-month period of network support services.  A full-year renewal of network support services (without

installation) retails for approximately $60. Accordingly, Class Members have no significant interest in litigating their claims individually.

Additionally, adjudication of individual lawsuits would also compromise judicial economy by requiring courts and juries to assess the same issue regarding Defendants' liability multiple times.  Moreover, there is no known litigation already commenced by any Class Member concerning these claims. Lastly, this District is the most desirable forum in which to certify the Class, as Best Buy is headquartered here, and Plaintiff's and the Class' HNMS Terms of Service stipulate the District of Minnesota as the appropriate forum for adjudication of these claims. Therefore, the Class meets the Rule 23(b)(3) superiority requirement.

**F.      The Court Should Approve the Class Notice.**

Rule 23(e) requires "[t]he court [to] direct notice in a reasonable manner to all class members who would be bound by" the proposed settlement.  Fed. R. Civ. P. 23(e)(1).  In addition, "[f]or any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  The standard by which the adequacy of class notice is judged is whether "the notice ordered is

reasonably calculated to reach the absent class members." *Benaquisto v. American Exp. Financial Corp.*, No. 00-1980, 2012 WL 3292886, at *2 (D. Minn. Aug. 13, 2012).

Here, email notice is appropriate because Plaintiff and the Class were required to provide emails in order to sign up for HNMS services and Defendants contacted Plaintiff and the Class at those email addresses in several instances, including: (1) to initially welcome them to Geek Squad Support and Protection; (2) notification when their contract was set to expire and reminder to renew; and (3) a "last chance" email notification very shortly before the contract's expiration. *See* Declaration of Matthew Bonin in Support of Settlement Agreement. Moreover, email notice is proper because email is the primary method by which Defendants have contacted Plaintiff and Class Members.

Finally, courts have approved email notices similar to the one the parties seek approval of here. *See Browning v. Yahoo! Inc.*, C04-01463 HRL, 2006 WL 3826714, at *8 (N.D. Cal. Dec. 27, 2006) ("[The proposed form of notice] employs email techniques that the Court finds to be particularly suitable in this case, where Settlement Class Members' allegations arise from their visits to Defendants' Internet websites, demonstrating that the Settlement Class Members are familiar and comfortable with email and the Internet."); *Lundell v. Dell, Inc.*, No. 05-3970, 2006 WL 3507938, at *1 (N.D. Cal. Dec. 5, 2006) (finding email notice appropriate for class which allegedly purchased defective computers); *In re*

*Netflix Privacy Litig.*, No. 11-00379, 2012 WL 2598819 (N.D. Cal. July 5, 2012) ("Email notice is especially appropriate here given the online nature of Netflix's business and the fact that Settlement Class members had to provide a valid email address when creating their Netflix accounts."); *see also Chavez v. Netflix, Inc.*, 162 Cal.App.4th 43, 58 (1st Dist. 2008) ("The class members conducted business with defendant over the Internet, and can be assumed to know how to navigate between the summary notice and the Web site. Using the capability of the Internet in that fashion was a sensible and efficient way of providing notice, especially compared to the alternative Vogel apparently preferred—mailing out a lengthy legalistic document that few class members would have been able to plow through."); *see also* Exhibit D (example Email Notice of Proposed Settlement of Class Action).

If Best Buy receives notification that an email is undeliverable, notice will be sent by regular mail to those Class members whose email cannot be located, or to whose address email notice is returned as undeliverable. This is consistent with similar approved notice plans. *See Browning*, 2006 WL 3826714, at *8 ("Moreover, in the event that an Email Notice sent to a Settlement Class Member is bounced back as undeliverable, the Amended Settlement Agreement provides for notice by standard mail.").

Accordingly, this Court should approve the Notice program.

G.      Proposed Schedule

The parties propose the following schedule of events leading to the Final

Approval Hearing as set forth in the Proposed Preliminary Approval Order:

| EVENT | DATE |
|---|---|
| Preliminary Approval Hearing | January 6, 2015 |
| Mailing of Notice | 15 business days following preliminary approval of settlement |
| Deadline for Settlement Class Counsel to submit Application for Attorneys' Fees and Expenses, and Request for Service Award | 21 days before Final Approval hearing |
| Deadline for Best Buy to submit its opposition to Settlement Class Counsel's Application for Attorneys' Fees and Expenses | 7 days before Final Approval hearing |
| Mailing Deadline for Objections to Settlement and to Applications for Attorneys' Fees and Expenses, and Request for Service Award | Postmark date of no later than 25 days before Final Approval Hearing |
| Mailing Deadline for Request for Exclusions (Opt-outs) | Postmark date of no later than 25 days before Final Approval Hearing |
| Deadline for filing papers in Support of Final Approval of Settlement | 7 days before Final Approval Hearing |
| Final Approval Hearing | 60 days following Preliminary Approval Hearing |

The above schedule is similar to those approved in numerous class action

settlements and provides adequate due process for Class Members to their right

to notice, to object, and to opt-out of the proposed Settlement.

## III.   CONCLUSION

The proposed Settlement was reached via extensive arm's-length negotiations, and is fair, reasonable, and adequate to all parties and the Class. For all of the above stated reasons, Plaintiff requests that the Court:

1.      Grant preliminary approval of the proposed Settlement;

2.      Provisionally certify, for purposes of settlement, the Class specified in the Settlement Agreement herein, pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3);

3.      Approve counsel as Settlement Class Counsel and approve Settling Plaintiff as Class Representative;

4.      Approve the Notice Plan as the best practicable means of providing notice of the Settlement to the Class;

5.      Approve the proposed schedule of deadlines as specified herein; and

6.      Schedule a Final Approval Hearing to consider Plaintiff's motion for final approval of the proposed Settlement and for entry of final judgment.

Dated:  December 15, 2014          Respectfully submitted,

**ZIMMERMAN REED, PLLP**

*s/ Anne T. Regan*
Charles S. Zimmerman (MN No. 120054)
Anne T. Regan (MN No. 333852)
1100 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Telephone: (612) 341-0400
Facsimile: (612) 341-0844
charles.zimmerman@zimmreed.com
anne.regan@zimmreed.com

Clinton A. Krislov
John Orellana
KRISLOV & ASSOCIATES, LTD.
Civic Opera Building
20 N. Wacker Drive, Suite 1300
Chicago, IL 60606
Telephone:  (312) 606-0500
Facsimile: (312) 606-0207
clint@krislovlaw.com
johno@krislovlaw.com

*Attorneys for Plaintiff*