# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Peter Roeser, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> Best Buy Co., Inc.; Best Buy Stores, L.P.; BBY Solutions, Inc.; Bestbuy.com, LLC; and Geek Squad; <br><br> Defendants. | Case No. 13-cv-1968 (JRT/HB) <br><br><br> **REPORT AND RECOMMENDATION** |

Anne T. Regan and Charles S. Zimmerman, Zimmerman Reed, PLLP, 1100 IDS Center, 80 South Eighth Street, Minneapolis, MN 55402; Clinton A. Krislov and John Orellana, Krislov & Associates, Ltd., 20 North Wacker Drive, Suite 1300, Chicago, IL 60606; for Plaintiff

Anne M. Lockner and Natalie I. Uhlemann, Robins Kaplan LLP, 800 LaSalle Avenue, Suite 2800, Minneapolis, MN 55402, for Defendants

---

HILDY BOWBEER, United States Magistrate Judge

This matter is before the Court on Plaintiff's Motion for Final Approval of Class Action Settlement [Doc. No. 42] and Plaintiff's Motion for Award of Class Representative Service Award and for an Award of Fees, Costs, and Expenses to Settlement Class Counsel [Doc. No. 47]. The motions were referred to the undersigned by the Honorable John R. Tunheim, United States District Judge, in an Order of Reference dated March 27, 2015 [Doc. No. 52]. For the reasons set forth below, the

Court recommends (1) granting Plaintiff's motion for final approval of the class action settlement, and (2) granting in part and denying in part Plaintiff's motion for a class representative service award and for an award of fees, costs, and expenses to settlement class counsel. Specifically, for the latter motion, the Court recommends granting a class representative service award in the form of a $2000 Best Buy gift card to Plaintiff, an award of attorney fees in the amount of $358,182.25 to settlement class counsel, and an award of expenses in the amount of $21,357.82 to settlement class counsel.

## I.      Background

On July 22, 2013, Plaintiff Peter Roeser commenced this putative class action individually and on behalf of other consumers of Defendant Geek Squad's "Home Networking Made Simple" (HNMS) product. (Compl. Intro. at 1 [Doc. No. 1].) The HNMS product included an in-home consultation, installation, and six-month service plan for purchasers of a home-networking system. (*Id.* ¶¶ 11, 12.) According to HNMS product brochures, terms of service, and Geek Squad websites, the six-month service plan period was to commence only after HNMS was completely installed. (*Id*. Intro. at 1-2.) However, Geek Squad measured the commencement of the service plan period from the date of purchase, rather than the date of installation. (*Id*. Intro. at 2.) Consequently, consumers who purchased HNMS but did not or were not able to schedule immediate installation were deprived of the full value of their service plan. (*Id*.) Based on these events, Plaintiff alleged the following causes of action: (1) consumer fraud, in violation of Minn. Stat. § 325F.69, subd. 1; (2) false advertising, in violation of Minn. Stat.

2

§ 325F.67; (3) deceptive trade practices, in violation of Minn. Stat. § 325D.44;

(4) unlawful trade practices, in violation of Minn. Stat. § 325D.13; (5) breach of contract;

and (6) unjust enrichment.

###    A.    The Settlement

Not long after Plaintiff filed suit, the parties engaged in mediation and reached an

agreement in principle.  (Regan Aff. ¶ 5, Apr. 7, 2015 [Doc. No. 57].)  The purpose of the

settlement agreement, dated December 8, 2014, was to effect a full and final settlement of

all claims by Plaintiff and putative class members against Defendants arising from or

relating to Best Buy's sale of Geek Squad's HNMS service plan and the period of

coverage under the plan.  (Regan Aff. Ex. A (Class Action Settlement Agreement and

Release ("Settlement Agreement") ¶ 3, Dec. 15, 2014 [Doc. No. 33-1].)

The settlement class is described in the Settlement Agreement as:

> All individuals who purchased Geek Squad's "Home
> Networking Made Simple" product from Geek Squad or Best
> Buy since July 22, 2012, and all individuals who, on July 22,
> 2012, had "Home Networking Made Simple" contracts that
> had not yet expired or come up for renewal.

> Excluded from the Settlement Class are Defendants, any
> entities in which they have a controlling interest, any of their
> parents, subsidiaries, affiliates, officers, directors, and the
> presiding judge(s) in this case and his, her, or their immediate
> family.

(*Id.* ¶ 2.)  Within the settlement class are three sub-classes:

> Sub-Class A: Class Members whose Home Networking Made
> Simple contracts expired on or after July 22, 2012, and who
> are not part of Sub-Class C (articulated below).

3

>Sub-Class B: Class Members with active Home Networking Made Simple contracts.
>
>Sub-Class C: Comprised of 86 Class Members who were identified as having Home Networking Made Simple contracts that expired on or after July 22, 2012, and who subsequently contacted Best Buy to schedule network installation in their homes.

(*Id.*)

Sub-Class A has 210,830 members.  (*Id.* ¶ 2 n.1.)  The settlement benefit award for Sub-Class A members is six months of HNMS service.  (*Id.* ¶ 5.)  Sub-Class B has 2,252 members.  (*Id.* ¶ 2 n.2.)  The settlement benefit award for Sub-Class B is a six-month extension of their current HNMS service contracts.  (*Id.* ¶ 5.)  The 86 members of Sub-Class C will each receive $100 cash.  (*Id.*)

The Settlement Agreement named Plaintiff as the class representative, and Clinton A. Krislov and John Orellana of Krislov & Associates, Ltd., and Charles S. Zimmerman and Anne T. Regan of Zimmerman Reed, PLLP, as settlement class counsel.  (*Id.* § II Definitions.)  Defendants agreed "to pay Settlement Class Counsel such amount as the Court may determine appropriate, upon submissions by each side, within a range of $100,000-$695,000."  (*Id.* ¶ 17.)  Defendants agreed to pay the Class Representative $2,000 in the form of a gift card.  (*Id.* ¶ 20.)  The only unresolved issue pertaining to the settlement was the amount of attorneys' fees to be awarded to settlement class counsel.  (*Id.* ¶ 17; Lockner Decl. ¶ 6, Apr. 2, 2015 [Doc. No. 55].)

## B.   Preliminary Approval

Following a preliminary settlement approval hearing on January 6, 2015,

4

Judge Tunheim entered an Order Granting Preliminary Approval of Class Action Settlement, Approving Form and Manner of Notice, and Setting Date of Hearing on Final Approval of Settlement [Doc. No. 38]. Judge Tunheim preliminarily approved the settlement and the form and method of notice, and set April 9, 2015, as the date for the final approval hearing. Any class member wishing to object to the settlement was allowed to file an objection at least twenty-five calendar days before the final approval hearing. (Order at 3-4, 6-8, Feb. 5, 2015 [Doc. No. 38].)

### C.    Notice, Opt-Outs, and Requests for Exclusion

Defendants provided notice of the settlement to class members at their last known email address, and for members with an invalid or unknown email address, by physical mailing to their last known physical address. (West Decl. ¶¶ 8, 9, Mar. 19, 2015 [Doc. No. 45].) Email notice was accomplished on February 24, 2015, and notices were physically mailed on February 26, 2015, and March 9, 2015. (*Id.* ¶¶ 8, 9, 11.)

From the total class of 213,168 individuals, Defendants received 150 requests for exclusion, and class counsel received three written requests to opt-out. (*Id.* ¶ 13; Krislov Aff. ¶ 4, Mar. 19, 2015 [Doc. No. 46].) One individual filed an untimely objection with the Court, objecting to "the short notice in which I can respond," and asked to be excluded from the class action. (Kubiak Obj'n [Doc. No. 41].)

## II.    Plaintiff's Motion for Final Approval of Class Action Settlement

Plaintiff moves to certify the proposed class, appoint Plaintiff as the class representative, appoint Plaintiff's counsel as settlement class counsel, grant final approval

of the proposed settlement, grant final approval of the notice sent to class members, and

for an entry of judgment.  (Pls.' Mot. Final Approval at 1 [Doc. No. 42].)  Defendants did

not file a memorandum in opposition or other response to the motion.

### A.      Certification of the Settlement Class

No class has yet been certified in this action, and Plaintiff asks the Court to certify

a settlement class pursuant to Rule 23(a) and (b)(3).  Defendants do not oppose the

request.  Although a settlement does not obviate the Court's duty to ensure class

certification is warranted under Rule 23, *see Amchem Products, Inc. v. Windsor*, 521 U.S.

591, 619-20 (1997), "[t]he requirements for class certification are more readily satisfied

in the settlement context than when a class has been proposed for the actual conduct of

litigation," *White v. National Football League*, 822 F. Supp. 1389, 1402 (D. Minn. 1993).

To certify a class, Plaintiff "must meet all of the requirements of Rule 23(a) and

must satisfy one of the three subsections of Rule 23(b)."  *In re: St. Jude Med., Inc.*,

425 F.3d 1116, 1119 (8th Cir. 2005).  The prerequisites for class certification under

Rule 23(a) are:

> (1) the class is so numerous that joinder of all members is impracticable;

> (2) there are questions of law or fact common to the class;

> (3) the claims or defenses of the representative parties are typical of the
>     claims or defenses of the class; and

> (4) the representative parties will fairly and adequately protect the interests
>     of the class.

Fed. R. Civ. P. 23(a).

Beginning with numerosity, the settlement class in this case has 213,168 total members.  The parties do not dispute, and the Court agrees, that the joinder of 213,168 plaintiffs would be impracticable.  *See Hartley v. Suburban Radiologic Consultants, Ltd.*, 295 F.R.D. 357, 376 (D. Minn. 2013) (finding the joinder of 10,000 to 20,000 plaintiffs impracticable).  Accordingly, the numerosity requirement is satisfied.

The second requirement, commonality, is also met.

> While not every question of law and fact must be common to the entire class, the Plaintiffs must show that the course of action giving rise to their cause of action affects all putative class members, and that at least one of the elements of that cause of action is shared by all of the putative class members.

*In re Hartford Sales Practices Litig.*, 192 F.R.D. 592, 603 (D. Minn. 1999).  Here, all class members purchased the HNMS product from Defendants and allege harm caused by the improper calculation of the six-month service period.  These allegations, as the parties agree, raise common issue of law and fact.  The slight factual differences resulting in the formation of three sub-classes do not defeat commonality.

Proceeding to typicality, the claims of representative parties are typical of class claims "when the claims of the named plaintiffs emanate from the same event or are based on the same legal theory as the claims of the class members." *Lockwood Motors, Inc. v. Gen. Motors Corp.*, 162 F.R.D. 569, 575 (D. Minn. 1995) (quoting *In re Workers' Compensation*, 130 F.R.D. 99, 105 (D. Minn. 1990)).  Plaintiff's claims and the claims of all class members arise from the same course of conduct and are based on the same legal theories.  Consequently, Plaintiff's claims are typical of the class claims.

The final requirement of Rule 23(a) is that the representative party will fairly and adequately protect the interests of the class.  Plaintiff must show that (1) he has "common interests with the members of the class;" and (2) he "will vigorously prosecute the interests of the class through qualified counsel."  *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 562-63 (8th Cir. 1982).  Defendants do not dispute that Plaintiff has common interests with the class members, that Plaintiff will vigorously pursue the class's interests, or that Plaintiff's counsel is qualified.  The Court has already found commonality between Plaintiff and the class, and now finds that Plaintiff has pursued vigorously the interests of the class through qualified counsel and will continue to do so.  In accordance with the Court's finding that Plaintiff and his counsel will fairly and adequately protect the members of the class, the Court recommends that Plaintiff be appointed the class representative and his counsel be appointed class counsel.

Proceeding to Rule 23(b)(3), the Court may certify a class only upon finding that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  The predominance factor "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem Prods.*, 521 U.S. at 623.  The primary concern "is whether defendant's liability as to all plaintiffs can be established by common evidence."  *Khoday v. Symantec Corp.*, No. Civ. 11-180 (JRT/TNL), 2014 WL 1281600, at *18 (D. Minn. Mar. 13, 2014) (citing *Avritt v. Reliastar Life Ins. Co.*,

8

615 F.3d 1023, 1029 (8th Cir. 2010)).

The primary factual issue in this case is whether Defendants incorrectly interpreted and applied the HNMS terms of service for network support. This issue affects each class member uniformly and predominates over any individual issue. The primary legal issues are whether Defendants committed consumer fraud, falsely advertised the HNMS product, committed deceptive and unlawful trade practices, breached the applicable HNMS contracts, and were unjustly enriched by their behavior. Legal issues integral to these claims predominate over any individual legal issue, and Defendants' liability for these causes of action would be established, for the most part, by common evidence. The only individual issues would arise in the damages context if each class member's date of purchase and date of home network installation were considered, but these issues do not predominate over common issues or otherwise affect the cohesion of the class. *See In re Select Comfort Corp. Sec. Litig.*, 202 F.R.D. 598, 610 (D. Minn. 2001) (recognizing that "courts frequently grant class certification despite individual differences in class members' damages").

Whether a class action is the superior method to fairly and efficiently adjudicate the case implicates the following factors: "(1) the interest of class members in individually controlling the prosecution of their claims; (2) the extent and nature of any litigation that has already begun; [and] (3) the desirability of concentrating the litigation in a particular forum." *Khoday*, 2014 WL 1281600, at *35 (citing Fed. R. Civ. P. 23(b)(3)(A)-(C).) When the Court assesses class certification in the settlement context, it

9

need not consider subsection (D) of Rule 23(b)(3). *Amchem Prods.*, 521 U.S. at 620.

There has been no showing in the present action that class members wish to individually control the prosecution of their claims, and the litigation is on the verge of resolution through settlement. Concentrating litigation in this forum will achieve the greatest efficiency for the parties and the Court. Thus, granting class certification "will limit duplicative litigation, limit the burden on this and other courts, and provide a uniform result for similarly situated parties." *Lockwood Motors, Inc.*, 162 F.R.D. at 582. Based on these considerations, the Court finds that a class action is the superior method of proceeding.

Having concluded that class certification is appropriate under Rule 23(a) and (b)(3), the Court recommends that the settlement class be certified as defined in the Settlement Agreement:

> All individuals who purchased Geek Squad's "Home Networking Made Simple" product from Geek Squad or Best Buy since July 22, 2012, and all individuals who, on July 22, 2012, had "Home Networking Made Simple" contracts that had not yet expired or come up for renewal.

> Excluded from the Settlement Class are Defendants, any entities in which they have a controlling interest, any of their parents, subsidiaries, affiliates, officers, directors, and the presiding judge(s) in this case and his, her, or their immediate family.

### B.    Whether the Settlement Is Fair, Reasonable, and Adequate

Federal Rule of Civil Procedure 23(e) provides that the claims of a certified class may be settled only with a court's approval. If the settlement "would bind class

members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *see In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 934 (8th Cir. 2005) ("Rule 23(e) requires the court to . . . ensure that the agreement is not the product of fraud or collusion and that, taken as a whole, it is fair, adequate, and reasonable to all concerned."). In assessing whether a proposed settlement is fair, reasonable, and adequate, the Court considers: "(1) the merits of the plaintiff's case, weighed against the terms of the settlement; (2) the defendant's financial condition; (3) the complexity and expense of further litigation; and (4) the amount of opposition to the settlement." *In re Wireless*, 396 F.3d at 932 (citation omitted). The first factor is the most important. *Id.* at 933.

Here, the four factors weigh in favor of finding the settlement fair, reasonable, and adequate. First, the merits of the class members' claims are proportionate to the terms of the settlement. The class members in Sub-Classes A and B have claims for damages that, at most, equal the market value of their time of service lost, calculated as the time between the date of purchase and the date of installation. (Pl.'s Mem. Supp. Mot. Final Approval at 25 [Doc. No. 44].) For Sub-Class A and B members, this was six months or less, and typically only a few weeks or days. (*Id.*) Under the settlement, these class members will receive a full six months of service, regardless of the amount of time actually lost. (*Id.*) For each class member in Sub-Class C, the settlement provides $100 in cash, which roughly equals the full purchase price of the HMNS service purchased. (*Id.* at 26.) Accordingly, the first factor is satisfied.

The second factor, Defendants' financial condition, is not at issue.  There is no indication that Defendants would not be able to pay for the settlement benefit.

Third, the complexity, expense, and risk of litigation make settlement of this class action appropriate.  The class members faced substantial risks in demonstrating actual injury, obtaining class certification, and proving damages.  The risk of litigating this case through trial and appeal supports a finding that the settlement is fair, reasonable, and adequate.

Fourth and finally, class reaction to the settlement has been largely supportive. Class counsel has received only three written opt-out requests, and Defendants' counsel reports only 150 requests for exclusion.  (*Id.* at 28; West Decl. ¶ 13.)  Only one class member filed an objection with the Court, and that objection was untimely.  Such minimal opposition to the settlement weighs in favor of finding it fair, reasonable, and adequate.

In sum, the Court finds the proposed settlement fair, reasonable, and adequate, and recommends that it be granted final approval.

## C.    Notice

Rule 23(e)(1) requires a court to "direct notice" of a proposed settlement "in a reasonable manner to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1).  On February 5, 2015, Judge Tunheim approved the form and manner of notice, and notice was emailed and mailed as directed.  This Court now finds that the notice of the proposed settlement constituted the best practicable notice, was reasonable,

and gave due, adequate, and sufficient notice to all individuals entitled to receive notice.

Further, the notice was reasonably calculated to advise class members of the litigation,

their right to object to the settlement, and their right to appear at the final approval

hearing.  Thus, the notice fully satisfied the requirements of Rule 23 and due process.

*See DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1176 (8th Cir. 1995).  The Court

recommends that the notice sent to class members be granted final approval.

III.    **Plaintiff's Motion for Award of Class Representative Service Award and for an Award of Fees, Costs, and Expenses to Class Counsel**

Plaintiff moves for a class representative service award in the form of a $2,000

Best Buy gift card, and for an award of fees, costs, and expenses to class counsel in the

amount of $695,000.  Defendants oppose the requested award to class counsel and ask the

Court to award no more than $155,608.

A.      **Class Representative Service Award**

Plaintiff seeks a class representative service award in the amount of $2,000 in the

form of a Best Buy gift card.  Defendants do not oppose the request, and no class member

objected to the proposed award.  "Service award payments are regularly made to

compensate class representatives for their help to a class."  *In re Zurn Pex Plumbing*

*Prods. Liab. Litig.*, No. 08-MDL-1958 (ADM/AJB), 2013 WL 716460, at *2 (D. Minn.

Feb. 27, 2013) (citing *In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F.

Supp. 2d 980, 1000 (D. Minn. 2005); *White*, 822 F. Supp. at 1406).  The Court finds the

$2,000 gift card a reasonable award to compensate the class representative for his work in

initiating the case, gathering documents for production, and assisting class counsel.  The

Court therefore recommends that the award be approved.

### B.     Award of Fees to Class Counsel

The parties dispute which method the Court should use to determine the reasonableness of class counsel's requested fees: the percentage-of-the-benefit method or the lodestar method.  The percentage-of-the-benefit method is used "to evaluate attorneys' fees in a common-fund settlement." *In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002).  The method is also referred to as the percentage-of-the-fund or percentage-of-the recovery approach.  *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 245 n.6 (8th Cir. 1996).  Employing this method, a court awards fees that are "equal to some fraction of the common fund that the attorneys were successful in gathering during the course of the litigation." *Id.* at 244-45.

Under the lodestar approach, by comparison, "the hours expended by an attorney are multiplied by a reasonable hourly rate of compensation so as to produce a fee amount which can be adjusted, up or down, to reflect the individualized characteristics of a given action." *Johnston*, 83 F.3d at 244.  The lodestar method yields a presumptively reasonable fee.  *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553-54 (2010).

A court has discretion to choose which method to apply, *Johnston*, 83 F.3d at 246, and it may cross-check the fairness and reasonableness of an award under one method against the other, *In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litigation*, 55 F.3d 768, 821 (3d Cir. 1995); *see also Zilhaver v. UnitedHealth Group, Inc.*, 646 F. Supp. 2d 1075, 1082 (D. Minn. 2009); *In re St. Paul Travelers*

*Securities Litigation*, No. 04-cv-3801 (JRT/FLN), 2006 WL 1116118, at *1 (D. Minn. Apr. 25, 2006).  But "[a] request for attorney's fees should not result in a second major litigation."  *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

### 1.   Percentage-of-the-Benefit Method

To apply the percentage-of-the-benefit method, there must be "sufficiently reliable evidence regarding the value of the settlement."  *Nienaber v. Citibank (S.D.) N.A.*, No. 04-cv-4054, 2007 WL 2003761, at *4 (D.S.D. July 5, 2007); *see Fouks v. Red Wing Hotel Corp.*, No. 12-cv-2160 (JNE/FLN), 2013 WL 6169209, at *7 (D. Minn. Nov. 21, 2013) (in coupon settlement case, noting "the actual monetary value of the coupons . . . is determinative when calculating an award as a percentage of the recovery").  Here, however, the settlement agreement does not describe a "common fund" or set a dollar amount for the settlement benefit award to Sub-Classes A and B, which would allow the Court to calculate a fractional amount.  The lack of an explicit value does not necessarily preclude application of the percentage-of-the-benefit method.  *See Fouks*, 2013 WL 6169209, at *7; *Browning v. Yahoo! Inc.*, No. C04-01463 HRL, 2007 WL 4105971, at *14 (N.D. Cal. Nov. 16, 2007).  But, as the party requesting fees, it is Plaintiff's burden to establish a factual basis for his request, including the value of the settlement.  *See Johnston*, 83 F.3d at 246.

Plaintiff asks the Court to value the settlement at $12,780,000, based on the opinion of his expert, Peter Hickey, who opined that the combined value of the settlement to all class members is "approximately $12.78 million."  (Krislov Aff. Ex. 3 (Hickey

15

Rep. ¶ 7.i) [Doc. No. 46-3].)  Hickey based his calculation on the retail value of a more

recent product offered by Best Buy, Geek Squad's Wireless Networking Service, through

which Geek Squad will set up a consumer's home network, name and secure the network,

connect two devices to the network, test and repair connectivity, and provide monthly

support for an initial cost of $99 and an ongoing monthly fee of $9.99.  (*Id.* ¶¶ 14-15.)

Using Geek Squad's pricing of $9.99 month for six months of service for 210,830

members of Sub-Class A, Hickey valued the benefit to Sub-Class A as $12,637,150.  (*Id.*

¶¶ 20, 23.)  Hickey used an identical calculation to value the six months of service to the

2,252 members of Sub-Class B, arriving at a value of $134,985.  (*Id.* ¶ 21.)  The value of

the $100 cash to the 86 members of Sub-Class C is $8,600.  (*Id.* ¶ 22.)  Thus, the value of

all settlement benefits, according to Hickey, is $12,780,735.[1]  (*Id.* ¶ 23.)  A fee award of

$695,000 would comprise approximately 5.4% of the settlement value.  (Pl.'s Mem.

Supp. Mot. Attorney's Fees at 8 [Doc. No. 49].)

    As Defendants argue, however, Geek Squad's Wireless Networking Services and

monthly technical support is not comparable to the HNMS service, because HNMS

provided only technical support for an installed network, whereas Wireless Networking

Services provides a full range of support for personal computers such as troubleshooting,

removing viruses, repairing operating systems, and installing hardware and software.

(Bonin Decl. ¶¶ 4-5 [Doc. No. 54].)  Thus, the above calculations do not provide an

accurate factual basis for Plaintiff's valuation of the settlement.

---

[1]  When reduced to present value, the amount is $12,773,429.  (*Id.* ¶ 23 n.36.)

Hickey also compares the HNMS product to services from several Best Buy competitors: Staples, iYogi, and iTok.net.  (Hickey Rep. ¶¶ 16, 17.)  These products also differ from the HNMS product, however, because they include additional services such as software installation, email help, Internet support, device connectivity, data backup, and virus removal, and are priced on a yearly basis.  (*Id.* ¶¶ 16, 17; Bonin Decl. ¶ 6.)

Plaintiff next asks the Court to rely on a declaration submitted by Defendants' employee, Matt Bonin, to value the settlement.  In describing the HNMS product, Bonin noted that the renewal subscription for a twelve-month term of additional support was $59.99 or, for six months of support, approximately $30.  (Bonin Decl. ¶ 11.)  Plaintiff uses the $30 pricing to calculate an alternate settlement value of $6,360,000.  (Pl.'s Reply Mem. at 5 n.3 [Doc. No. 56].)  In response, Defendants point to the next sentence in Bonin's Declaration, in which he averred that only 6.3% of customers chose to renew their HNMS subscription, and thus, the actual value of a six-month extension of the service was "far lower" than $30.  (Bonin Decl. ¶ 11.)  Indeed, the product is no longer being offered at all.  (*Id.* ¶ 12.)  The Court is not persuaded that the price of the HNMS product in the marketplace when it was sold, which is what Bonin opined to, is fairly indicative of the actual value of the HNMS service to be provided to the class.

The Court finds that Plaintiff has not provided sufficiently reliable evidence of the value of the settlement to justify using the percentage-of-the-benefit method.  The settlement agreement itself does not set forth a particular dollar amount or define parameters from which an amount could be calculated.  Hickey bases his valuation on

17

services that are not comparable to HNMS, and Bonin's $30 valuation does not reflect actual market value.  There are other uncertain factors affecting the valuation of the settlement as well, such as the percentage of the class that will actually take advantage of the benefit and the non-cash nature of the settlement.  *See Dewey v. Volkswagen of Am.*, 728 F. Supp. 2d 546, 593-94 (D.N.J. 2010) (citations omitted), *rev'd and remanded sub nom. on other grounds Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170 (3d Cir. 2012).  When there is a dispute as to the value of the relief provided by a settlement, a court may use its discretion to apply the lodestar approach instead of the percentage method.  *Johnston*, 83 F.3d at 246.  Accordingly, the Court will use the lodestar approach to method to analyze the fee award.

### 2.     Lodestar Method

The lodestar method "has several important virtues."  *Perdue*, 559 U.S. at 551.  Although in *Perdue* the attorney's fees were requested pursuant to a fee-shifting statute, 42 U.S.C. § 1988, the *Perdue* Court's general pronouncements about the lodestar method are instructive here.

The lodestar approach is easy to administer, objective, and "produces an award that roughly approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case."  *Perdue*, 559 U.S. at 551-52.  The *Perdue* Court contrasted the lodestar approach with the twelve-factor test enunciated in *Johnson v. Georgia Highway Express, Inc.*,

488 F.2d 714, 717-719 (5th Cir. 1974),[2] which the Court found too subjective and prone

to produce disparate results. *Perdue*, 559 U.S. at 550-51. The lodestar approach, on the

other hand, already incorporates most of the factors relevant to determining a reasonable

attorney's fee, and "an enhancement may not be awarded based on a factor that is

subsumed in the lodestar calculation." *Id.* at 553 (citations omitted). For example, "the

quality of an attorney's performance generally should not be used to adjust the lodestar

'[b]ecause considerations concerning the quality of a prevailing party's counsel's

representation normally are reflected in the reasonable hourly rate.'" *Id.* (quoting

*Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 566 (1986)).

A court applying the lodestar method should enhance the lodestar amount only in rare or

exceptional circumstances. *Id.* at 552 (citations omitted).

 The Court begins the lodestar inquiry by multiplying the hours expended by the

applicant's attorneys by the reasonable hourly rate or rates of compensation. *Johnston*,

83 F.3d at 244. In assessing whether an hourly rate is reasonable, the Court may rely on

---

[2]  The twelve factors identified in *Johnson* are:

> (1) the time and labor required; (2) the novelty and difficulty of the
> questions; (3) the skill requisite to perform the legal service properly;
> (4) the preclusion of employment by the attorney due to acceptance of the
> case; (5) the customary fee; (6) whether the fee is fixed or contingent;
> (7) time limitations imposed by the client or the circumstances; (8) the
> amount involved and the results obtained; (9) the experience, reputation,
> and ability of the attorneys; (10) the "undesirability" of the case; (11) the
> nature and length of the professional relationship with the client; and
> (12) awards in similar cases.

*Hensley*, 461 U.S. at 430 n.3 (citing *Johnson*, 488 F.2d at 717-719).

its "own experience and knowledge of prevailing market rates." *Hanig v. Lee*, 415 F.3d 822, 825 (8th Cir. 2005).

In Plaintiff's initial motion papers, class counsel claims to have spent 670 hours on this litigation on tasks such as investigating Plaintiff's and the class's claims, drafting and filing the complaint, meeting with opposing counsel and conducting initial discovery, preparing for and attending a mediation, preparing a Rule 26 report, appearing at a scheduling conference, finalizing the parties' settlement and settlement agreement, preparing the joint preliminary approval papers, and responding to more than eighty queries from the class. (Regan Aff. ¶¶ 7, 9, Mar. 19, 2015 [Doc. No. 50]; Krislov Aff. ¶¶ 11-12.) Those 670 hours did not include time spent to obtain final approval of the settlement or anticipated future time. Multiplying the hours expended by the various compensation rates of counsel, the lodestar amount as of March 18, 2015, was $309,216.25. (Regan Aff. ¶ 10 & Ex. B, Mar. 19, 2015 [Doc. No. 50]; Krislov Aff. ¶ 13 & Ex. 2.)

Class counsel provided actual billing records to the Court at the motion hearing for the Court's in camera review. Those records reveal that attorneys and administrative professionals at Zimmerman Reed spent 323.80 hours working on the case through March 31, 2015. The attorneys' billing rates ranged from $550 to $775 per hour, and the administrative professionals' rates ranged from $100 to $160 per hour. The total amount of fees claimed by Zimmerman Reed as of March 31, 2015, is $160,848.75. Attorneys and administrative professionals at Krislov & Associates spent a total of 464.65 hours

20

working on the case through April 8, 2015.  The attorneys' billing rates ranged from $250 to $880 per hour.  The total amount of fees claimed by Krislov & Associates as of April 8, 2015, is $197,333.50.  Multiplying the hours expended by the various compensation rates of counsel, the current lodestar amount is $358,182.25.

While the total hours recorded are somewhat high (perhaps in part because there were two law firms working on behalf of Plaintiffs), the Court has not identified any obviously excessive, redundant, or unnecessary hours.[3]  *See Hynes v. McGoldrick, Inc.*, No. 11-cv-3512 (JRT/JSM), 2013 WL 6328867, at *3 (D. Minn. Dec. 5, 2013) (quoting *Hensley*, 461 U.S. at 434).  The Court also declines to reduce the number of hours based on a comparison with the number of hours claimed by Defendants' counsel, as urged by Defendants.  *See Burks v. Siemens Energy & Automation, Inc.*, 215 F.3d 880, 884 (8th Cir. 2000) ("Such an apples-to-oranges comparison is not required by law and would not be advisable.  The most obvious flaw with this proposed requirement is that making such a comparison . . . would require the trial court to first determine whether the defendant's counsel billed a reasonable amount.").  Although, based on the Court's own experience

---

[3] The Court notes that the Zimmerman Reed firm has tracked its hours in quarter-hour increments, rather than one-tenth hour (six minute) increments.  While tracking time in larger increments is not *per se* impermissible, it is discouraged because it may lead to inflation of the hours recorded.  *See J.W. ex rel. Tolbert v. Saint Paul Pub. Sch. Indep. Sch. Dist. No. 625*, No. 12-cv-1369 (DWF/JSM), 2013 WL 5177471, at *8 (D. Minn. Sept. 13, 2013).  Accordingly, the preferred approach is to track by the tenth of an hour, and some courts have exercised their discretion to disallow or reduce time billed in larger increments.  *See, e.g.*, *id.*  However, as the Court has not found a clear indication that the larger increments resulted in an overstatement of the hours actually expended by the Zimmerman Reed firm, the Court will not reduce the fees on that basis in this case.

CASE 0:13-cv-01968-JRT-HB   Document 59   Filed 06/17/15   Page 22 of 28

and knowledge of market rates, hourly compensation rates of $775 for attorney Charles

S. Zimmerman and $880 for attorney Clinton A. Krislov are higher than the prevailing

market rates in this area,[4] the Court will account for the contingency nature of this case,

the high-quality work performed by counsel, and the typically higher compensation rates

approved for class counsel, in approving these hourly rates. *See Yarrington v. Solvay*

*Pharm., Inc.*, 697 F. Supp. 2d 1057, 1066-67 (D. Minn. 2010).

     In determining a reasonable fee, the Court may also account for "the plaintiff's

overall success; the necessity and usefulness of the plaintiff's activity in the particular

matter for which fees are requested; and the efficiency with which the plaintiff's

attorneys conducted that activity." *Jenkins ex. rel. Jenkins v. Missouri*, 127 F.3d 709,

718 (8th Cir. 1997); *see Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 127 (8th Cir.

1975) (including "the contingent nature of success" and "the quality of the attorneys'

work" as other factors relevant to establishing a reasonable fee). "The most critical factor

in assessing fees is the degree of success obtained." *Fish v. St. Cloud State Univ.*,

295 F.3d 849, 852 (8th Cir. 2002). Here, class counsel accepted representation with no

promise of payment and litigated the case vigorously on behalf of the class. Counsel

expeditiously negotiated a settlement for a class with more than 200,000 members, which

provided an additional six months of HNMS support to most members and a full refund

---

[4] Defendants also submitted an expert report from Sam Hanson, a former Minnesota Supreme Court justice and now President and Managing Partner of the law firm of Briggs & Morgan, who opined that the hourly rates of Zimmerman and Krislov were "somewhat above the top hourly rates in the Twin Cities market." (Lockner Decl. Ex. C (Hanson Rep. at 7) [Doc. No. 55-2].)

to 86 members.  The negotiated resolution of the action was favorable and fair.  These additional considerations support the reasonableness of a $358,182.25 fee award.

Plaintiff asks the Court to apply a lodestar multiplier, however, to bring the fee award to $695,000.  In "rare" and "exceptional" cases, "counsel may be entitled to a multiplier to reward them for taking on risk and high-quality work."  *See Forshee v. Waterloo Indus., Inc.*, 178 F.3d 527, 532 (8th Cir. 1999); *In re UnitedHealth Grp., Inc. PSLRA Litig.*, 643 F. Supp. 2d 1094, 1106 (D. Minn. 2009).  It is true that class counsel took the case on a contingent basis, assumed the risk of no recovery, and bore all costs, but the Court has already accounted for these factors in its above calculation.  Moreover, while counsel achieved a favorable result, the settlement was negotiated early in the case and was not particularly hard-fought.  Indeed, the most contentious litigating appears to have concerned the amount of attorneys' fees.  Finally, the case did not present novel or complex issues, or an uncertain legal framework.  As the Eighth Circuit observed in *Forshee*:

> An upward adjustment to an attorney's lodestar hourly rate is permissible in certain rare and exceptional cases, supported by both specific evidence on the record and detailed findings by the lower courts.  Because the lodestar amount may already compensate the applicant for exceptionally good service and results, however, the fee applicant must do more than establish outstanding service and results.  The applicant also must establish that the quality of service rendered and the results obtained were superior to what one reasonably should expect in light of the hourly rates charged and the number of hours expended.

178 F.3d at 532 (internal quotation marks and citations omitted); *see also Republican Party of Minn. v. White*, 456 F.3d 912, 921 (8th Cir. 2006) (citing *Forshee* and declining

to award a 1.5 multiplier to plaintiff's attorney, despite the attorney's argument that he took on an extremely unpopular case and achieved exceptional results).  And in *Hendrickson v. Branstad*, the Eighth Circuit reversed the trial court's 25% fee enhancement because the results obtained, the high risk factor, and the contingent nature of payment were subsumed in the number of hours and the hourly rates encompassed by the lodestar award:

> [T]o avoid double counting, the results obtained and the contingency of payment should not ordinarily be considered as independent grounds to enhance the lodestar.  Although an enhancement is permissible based on these factors, enhancement is reserved for "rare" and "exceptional" cases, and must be supported by specific evidence in the record and detailed findings by the lower court.

934 F.2d 158, 162 (8th Cir. 1991).

Accordingly, the Court declines to recommend applying a multiplier to the lodestar amount.  The case was settled early, efficiently, and non-contentiously.  The number of attorneys and firms involved, the number of hours billed, and the hourly rates of those attorneys included in the lodestar already take into account the contingent nature of the action and the risk of non-recovery.  Defendants came to the table early and provided uniform, substantial relief to the class, regardless of the value of each member's claim.  The Court therefore does not find this to be the "rare" and "exceptional" case that would justify a multiplier over and above the lodestar award.

### C.      Award of Costs and Expenses to Class Counsel

Zimmerman Reed has incurred $11,435.52 in unreimbursed costs and expenses,

and Krislov & Associates has incurred $9,922.30,[5] for a total of $21,357.82.  (Regan

Aff. ¶ 12, Mar. 19, 2015 [Doc. No. 50]; Pl.'s In Camera Time Report Detail Submission.)

The costs and expenses include court fees, copying costs, telephone costs, postage,

delivery fees, mediation fees, expert fees, travel expenses, and legal research.  (Krislov

Aff. Ex. 2; Regan Aff. Ex. C, Mar. 19, 2015 [Doc. No. 50-3].)  Such costs and expenses

reasonably incurred by class counsel are properly reimbursed.  *See In re Xcel Energy*,

364 F. Supp. 2d at 1000.  The Court has reviewed the costs and expenses and finds they

are reasonable, are typical of costs and expenses ordinarily charged to clients, and were

necessary to the resolution of this litigation.  *See In re St. Paul Travelers Sec. Litig.*,

2006 WL 1116118, at *1.

## IV.     Recommendation

Based on the above and all the files, records, and proceedings herein, **IT IS**

**HEREBY RECOMMENDED** that the District Court:

1.      Find subject matter jurisdiction over the action, Plaintiff, the settlement

class members, and the settling parties;

2.      Adopt all defined terms as set forth in the settlement agreement unless

otherwise defined herein;

3.      Find that the settlement resulted from arms-length negotiations and was not

---

[5]  Krislov & Associates' original request for costs and expenses was $8,858.30.  (Krislov
Aff. ¶ 15 & Ex. 2.)

the product of collusion;

4.      Find that the settlement class meets the class certification requirements of

Federal Rule of Civil Procedure 23(a) and (b)(3), and certify the following class:

> All individuals who purchased Geek Squad's "Home
> Networking Made Simple" product from Geek Squad or Best
> Buy since July 22, 2012, and all individuals who, on July 22,
> 2012, had "Home Networking Made Simple" contracts that
> had not yet expired or come up for renewal.
>
> Excluded from the Settlement Class are Defendants, any
> entities in which they have a controlling interest, any of their
> parents, subsidiaries, affiliates, officers, directors, and the
> presiding judge(s) in this case and his, her, or their immediate
> family.

5.      Find that the notice constituted the best practicable notice; was reasonably

calculated, under the circumstances, to apprise members of the Class of the pendency of

the litigation, their right to object to the settlement, and their right to appear at the final

approval hearing; was reasonable and constituted due, adequate, and sufficient notice to

all persons entitled to receive notice; and met all applicable requirements of the Federal

Rules of Civil Procedure and any other applicable law;

6.      Find the settlement fair, reasonable, adequate, and in the best interests of

the class;

7.      Appoint Plaintiff as the class representative and Plaintiff's counsel as class

counsel;

8.      Award attorneys' fees in the amount of $358,182.25, expenses in the

amount of $21,357.82, and a service award to Plaintiff in the form of a $2000 Best Buy

gift card, because all are fair and reasonable;

9.      Retain jurisdiction over this action to consider all further matters arising out of or connected with the settlement, including enforcement of the releases provided for in the settlement agreement;

10.     Enter judgment pursuant to the settlement agreement, dismiss the action against all Defendants with prejudice, extinguish and release all settled claims as set forth in the Settlement Agreement, and bar claims as set forth in and subject to the settlement agreement;

11.     **GRANT** Plaintiff's Motion for Final Approval of Class Action Settlement [Doc. No. 42]; and

12.     **GRANT IN PART** and **DENY IN PART** Plaintiff's Motion for Award of Class Representative Service Award and for an Award of Fees, Costs, and Expenses to Settlement Class Counsel [Doc. No. 47], as set forth fully herein.


Dated:  June 17, 2015              _s/ *Hildy Bowbeer*_____
                                   HILDY BOWBEER
                                   United States Magistrate Judge



**NOTICE**

Pursuant to D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **July 2, 2015**, a writing that specifically identifies those portions of this Report to which objections are made and the basis for each objection.  A party may respond to the

objections within fourteen days of service thereof.  Written submissions by any party shall comply with the applicable word limitations provided for in the Local Rules. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  This Report and Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Court of Appeals.